[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff from the assessment of damages in the amount of $1000 deposited by the defendant with the clerk of court for the total taking by eminent domain on October 31, 1991, of his property situated on the westerly side of Sylvester Street, in the Town of Bristol, for the layout, alteration extension, widening, change of grade and improvement of the highway commonly known as Conn. Route 72.
The premises taken are more particularly bounded and described as follows: Northerly by lands now or formerly of James H. Elledge et al., and Joseph S. Capirchio et al., by each in part, in all, 160 feet; Easterly by Sylvester Street, 82 feet; Southerly by land now or formerly of the Town of Bristol, 165 feet, more or less; and Westerly by Bishop Street, 68 feet.
Said parcel taken contains 0.279 of an acre, more or less, together with all appurtenances, all of which more particularly appears on a map entitled: "Town of Bristol, Map Showing Land Acquired From Chester J. Suhovski by the State of Connecticut, Conn. Rte. 72, Scale 1" = 40', September 1990, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways," and being the same premises acquired by the plaintiff by warranty deed dated June 4, 1948.
The subject property is located in a Residential R-10 zone, a single-family dwelling zone. The surrounding improved lots are used for residential purposes exclusively, but of smaller homes. The neighborhood is located in the south-central portion of the City of Bristol. Pine Street, CT Page 9160 a major local artery also known as Route 72, is nearby to the north. Most of the land along Pine Street has been improved with factories, stores, car repair and service facilities, restaurants, car washes and office buildings.
The subject land has 82 feet of frontage on the west side of Sylvester Street, an unimproved or "paper" street. The tract, of which the subject is a part, was subdivided in 1906. Therefore, the parcel is a lot of record and would not require a variance to meet the minimum 85 foot street frontage. A building permit, however, could not issue for lack of frontage on an improved street. The rear portion of the property is substantially above the grade of the front property line. The rear 60 feet of the lot slopes steeply. After a city-wide revaluation of property in 1987, the plaintiff's land was assessed at $4200.
The defendant's appraiser, an employee of the Department of Transportation at the time of the appraisal, is of the opinion that it would not be economically feasible to improve Sylvester Street to provide access to the property. Therefore, the condemned property is not a buildable lot. For that reason, he concludes that the highest and best use for the subject property is for open space or conservation purposes.
The plaintiff's appraiser reasons otherwise. Since the lot is 125 distant from the improved portion of Christopher Street to the south, it would be economically feasible to convert the present "paper" portion of Sylvester Street to city road standards. That, with the installation of a septic sanitary waste system similar to that on neighboring lots, would allow the lot to be utilized for its highest and best use, a residential building lot. The court so finds.
The appraisers for the respective parties utilized the sales comparison approach in their estimates of damage caused by the taking. Each appraiser, however, utilized different comparable sales based on his analysis of the highest and best use of the land.
The defendant's appraiser was unable to locate any open space sales in Bristol. In fact, he was unable to find any open space sales that were similar in size to the subject in the Greater Hartford area. That was so because his highest and best use classification of a parcel of land 0.279 of an acre, more or less, as "open space" is a contradiction in terms. (See General Statutes sections 7-131c through 7-131k for the definition of open space land and provisions for its acquisition by local and state authorities.)
For his comparable sales of "open space" lands, the defendant's CT Page 9161 appraiser reached into South Windsor and Simsbury for private sales of acreage. The two sales in South Windsor were each of 15 acre parcels, and the sale in Simsbury contained 7.8 acres. The indicated value of the subject 0.279 of an acre, more or less, by these comparisons was $3333, $3666 and $3590 per acre, respectively. Admitting that "Sales Comparison Approach would be more reliable if small open space sales were available in Bristol," the defendant's appraiser concluded that the subject land was valued at $3600 per acre, or $1004 for the parcel, rounded to a fair market value of $1000. This analysis and conclusion lacks credibility.
The plaintiff's appraiser utilized six recent improved single-family building lot sales in the City of Bristol. These ranged in size from 0.1 of an acre to 0.16 of an acre. Their adjusted sale price extended from $35,500 to $42,750, or $5.43 to $9.51 per square foot. By these comparisons, he concluded that the fair market value of the subject property was $42,000, or $6.75 per square foot, subject to deductions for the extension of improvements on Sylvester Street to the lot and the installation of a septic system for waste disposal. These improvements he estimated to cost $22,500 and $3500, respectively, resulting in a fair market value of $16,000 for the property taken by the defendant.
It is the duty of this court to make an independent determination of value and fair compensation for the property taken in the light of all circumstances, the evidence, the opinions of the expert witnesses, his knowledge of the elements that establish value and a viewing of the premises. Minicucci v. Commissioner of Transportation. 211 Conn. 333, 388
(1989). In the performance of this duty, I find that the value of the land taken is $6000. Damages therefore, are assessed at $6000.
Judgment may enter for the plaintiff in the amount of $6000, less $1000 previously deposited with the clerk of court, or an excess of $5000, with interest on such excess from the date of taking to the date of payment, together with costs, and a reasonable appraisal fee of $1000.
William C. Bieluch State Trial Referee